# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN LANE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 10446 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kevin Lane brought this suit against Bayview Loan Servicing, LLC, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, *et seq.*[1] R. 1, Compl.[2] Lane alleges that, in violation of § 1692g, Bayview Loan Servicing "overshadowed" his right to verify his mortgage debt within thirty days of receiving a debt-verification letter. Bayview now moves to dismiss Lane's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 11, Def.'s Mot. to Dismiss. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in Lane's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Lane is an Illinois resident who defaulted on his mortgage debt. Compl. ¶¶ 7, 12. In October 2015, Bayview Loan Servicing acquired the servicing rights for Lane's mortgage loan. *Id.*

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.
[2]Citations to the docket are indicated by "R." followed by the docket entry.

¶ 12; R. 1-2, Exh. B, 10/14/2015 Debt Validation Letter; R. 1-4, Exh. D, 10/16/2015 Monthly Mortgage Statement ("We have recently acquired your loan for servicing."). On October 14, 2015, Bayview sent Lane a letter detailing his right to seek validation of the mortgage debt, including verification of the amount and source of the debt, within thirty days. Compl. ¶ 16; Exh. B, 10/14/2015 Debt Validation Letter. The letter informed Lane that he owed $228,992.69. Exh. B, 10/14/2015 Debt Validation Letter.

Two days later, on October 16, 2015, Bayview sent Lane a monthly mortgage statement. Compl. ¶ 21; Exh. D, 10/16/2015 Monthly Mortgage Statement. The statement said that Lane had an "outstanding principal balance" of $207,713.07, and that he owed $26,285.92 by November 1, 2015. Exh. D, 10/16/2015 Monthly Mortgage Statement. According to the statement, Lane would incur a $65.71 late fee if Bayview received the $26,285.92 payment after November 16, 2015. *Id.*; *see also* Compl. ¶ 22. The statement also warned Lane that missed or late payments could negatively impact his credit: "Credit Reporting[:] We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." Exh. D, 10/16/2015 Monthly Mortgage Statement; *see also* Compl. ¶ 23.

A week later, on October 23, 2015, Bayview sent Lane yet another letter. Compl. ¶ 17; R. 1-3, Exh. C, 10/23/2015 HAMP Solicitation Letter. This letter contained information about the Home Affordable Modification Program (HAMP), which the federal government established to help homeowners refinance or modify

their mortgages to avoid foreclosure. Compl. ¶ 17; Exh. C, 10/23/2015 HAMP Solicitation Letter. In addition to generally describing the HAMP application process, the letter encouraged homeowners' participation in the program: "You may be able to make your payments more affordable. Act now to get the help you need!" Exh. C, 10/23/2015 HAMP Solicitation Letter; *see also* Compl. ¶ 17.

Lane filed this federal lawsuit on November 19, 2015, alleging that Bayview violated § 1692g of the FDCPA. *See* Compl. Specifically, he claims that the monthly mortgage statement and the HAMP solicitation letter violated that section because they "overshadowed" his right to validate the mortgage debt within thirty days of receiving the October 14, 2015 debt validation letter. *Id.* ¶¶ 26, 27, 29. By "overshadow," Lane means that the mortgage statement and the HAMP solicitation letter suggested that he did *not* have the thirty-day period to seek verification of the debt, but instead had to pay up before that time was up. Lane seeks statutory damages for the alleged § 1692g violations. *Id.* ¶ 31. Bayview now moves to dismiss the entirety of Lane's complaint, arguing that he lacks standing (because he suffered no damages other than statutory damages) and that Lane otherwise fails to state a claim. Mot. to Dismiss.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

Lane premises his § 1692g overshadowing claim on the monthly mortgage statement and the HAMP solicitation letter he received in October 2015.[3] *See*

---

[3]The complaint also relies on two other documents that Lane received from Bayview in October 2015. The first document is an October 19, 2015 letter that concerns an entirely different loan (Loan No. ***9279) than the loan at the crux of Lane's complaint (Loan No. ***5030). *See* R. 1-1, Exh. A, Notice of Transfer of Mortgage Loan. In his response brief, Lane ostensibly withdraws the portion of his complaint that concerns this October 19, 2015 letter. *See* R. 17, Pl.'s Resp. Br. at 2 ("[T]he Complaint makes clear that Defendant's actions with loan number ***5030 alone are a violation of 15 U.S.C. Section 1692g. While Plaintiff regrets confusing the two loans, it clearly lays out in its Complaint that under Section

4

Compl. Bayview moves to dismiss Lane's claim, asserting that Lane lacks standing to bring his FDCPA claim pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and that neither the October 16, 2015 monthly mortgage statement nor the October 23, 2015 HAMP solicitation letter overshadowed Lane's debt validation rights. *See* Mot. to Dismiss; R. 18, Def.'s Reply Br. The Court will analyze the standing issue first in light of the Supreme Court's recent decision in *Spokeo* before addressing the rest of Bayview's dismissal arguments.

## A. Standing to Sue

Bayview contends that Lane lacks standing to bring his FDCPA claim because the complaint only sought statutory damages and because Lane did not suffer any concrete harm as a result of the alleged § 1692g violation. Mot. to Dismiss at 7. The parties' briefing is somewhat confused on this issue, because they seem to equate actual *monetary* loss with the Article III standing requirement that a plaintiff must suffer a *concrete* injury. Specifically, Bayview says that it concedes "actual" damages are not needed for Article III standing, cites two Seventh Circuit cases for that proposition, and concludes its five-sentence argument on standing by saying it is simply preserving an argument based on the then-pending *Spokeo* case

---

1692g, Defendant overshadowed/confused Plaintiff[']s rights with the language it used in the three correspondences for loan ***5030.").

The second document is a brochure that, according to Lane, came with the HAMP solicitation letter that Bayview sent on October 23, 2015. R. 1-4, Exh. E, HAMP Solicitation Brochure; Compl. ¶ 24; *see also* Exh. C, 10/23/2015 HAMP Solicitation Letter. Lane included the brochure as part of the October 23, 2015 HAMP solicitation letter that he attached to the complaint. *See* Exh. C, 10/23/2015 HAMP Solicitation Letter, so the Court considers the brochure along with the October 23, 2015 HAMP solicitation letter.

in the Supreme Court. *See* Mot. to Dismiss at 7 (citing *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998), and *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013)). In response, Lane also appears to equate actual damages with the Article III concrete-harm requirement, going so far as conceding that he "does not allege nor in good faith could allege any other damage except statutory damages through 15 U.S.C. Section 1692k." R. 17, Pl.'s Resp. Br. at 5.

Actual monetary damages and the Article III concrete-harm requirement are not exactly the same thing. To be sure, if a plaintiff suffers actual monetary damages, then almost surely the Article III concrete-harm requirement is satisfied. But even though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition. Put another way, even absent actual monetary damages, it is still possible to satisfy the concrete-harm requirement, although federal courts must be careful to ensure that this crucial Article III requirement is met. *Spokeo*, which the Supreme Court has now decided, makes this clear. In that case, the plaintiff alleged that an online personal-information publisher violated the Fair Credit Reporting Act (FCRA) by publishing inaccurate information about him. 136 S. Ct. at 1546. The website got several things wrong, reporting that "he is married, has children, is in his 50s, has a job, is relatively affluent, and holds a graduate degree." *Id.* There was no allegation (at least as the case was presented in the Supreme Court) that the plaintiff had suffered any actual monetary harm. *Id.* Even absent that allegation, however, the Supreme Court reiterated that the concrete-harm requirement does not require that the alleged injury be "tangible."

*Id.* at 1549. Instead, the Supreme Court explained, "[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that *intangible* injuries can nevertheless be concrete." *Id.* (emphasis added).[4]

In sorting out which intangible injuries are enough to confer standing and which are not, *Spokeo* laid out basic principles: a "bare procedural violation" of a statute is *not* automatically enough to satisfy Article III's concreteness requirement. 136 S. Ct. at 1549. To be sure, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit. The legislative branch, with its fact-finding ability and responsiveness to the public interest, "is well positioned to identify intangible harms that meet minimum Article III requirements," so Congress's judgment on the nature of the injury is "instructive and important." *Id.* But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right … . Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

---

[4]At the same time, concreteness is indeed a requirement that is separate and apart from the Article III requirement that the injury be "particularized" to the individual plaintiff. *Id.* at 1548. Specifically, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete *and* particularized.'" *Id.* at 1548 (emphasis added) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The other principle announced by *Spokeo* is that the *risk* of harm sometimes is enough to satisfy concreteness. 136 S. Ct. at 1549. To illustrate this point, the Supreme Court offered both a historical example and a statute-based example. *Id.* From history, *Spokeo* noted that common-law defamation cases have long allowed plaintiffs to sue even though their actual damages are difficult to prove. *Id.* From Congress, *Spokeo* cited two information-rights cases, *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998) and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989), both of which involved plaintiffs who sought information that Congress had decided to make available to the public. *Spokeo*, 136 S. Ct. at 1549-50. There was no particular *substantive* standard of conduct set by the pertinent provisions of the information-access statutes involved in those cases. Indeed, *Public Citizen* cited to prior cases involving the Freedom of Information Act, and declared, "Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Public Citizen*, 491 U.S. at 449 (citing cases). These *procedural*-rights only cases led *Spokeo* to explain that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress identified." 136 S. Ct. at 1549 (emphasis in original).[5]

---

[5]Because the Ninth Circuit had not considered the concrete-harm requirement, the Supreme Court vacated the appeals decision and ordered that the Ninth Circuit address on remand "whether the particular procedural violations alleged … entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

The information-access cases cited by *Spokeo* suggest that, in this case, Lane has alleged a sufficiently concrete injury because he alleges that Bayview denied him the right to information due to him under the FDCPA. In its legislative findings, Congress declared that "many" debt collectors use "abusive, deceptive, and unfair debt collection practices[.]" 15 U.S.C. § 1692(a). Without the protections of the FDCPA, Congress determined, the "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." *Id.* § 1692(b). To prevent unsuspecting debtors from paying invalid debts, or paying more than truly owed, Congress equipped debtors with the right to demand verification of the debt (and its amount) within thirty days of receiving an initial debt-collection communication from a debt collector. *Id.* § 1692g(a)(4); *see also Church v. Accretive Health, Inc.*, — Fed. Appx. —, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (unpublished opinion)[6] (§ 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement); *cf. Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 102-03 (1st Cir. 2014) (§ 1692g claim conferred standing, though decided pre-*Spokeo*). This right to information is similar to the information-access interests protected by the Freedom of Information Act and other federal laws that authorize access to government records. Indeed, the right to get information to verify a debt is arguably *more* concrete than the right to obtain government records. The debtor is getting information in an attempt to verify a *monetary* obligation that the creditor asserts. In contrast, a FOIA plaintiff is often seeking to vindicate an interest in

---

[6] Unpublished opinions of the Eleventh Circuit are not binding precedent, "but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

learning the premise of government decisions. As important as that interest is (and it is extremely important), there is an abstract quality to it when compared to cold, hard cash (figuratively speaking).

There is yet another way in which § 1692g goes even further than other information-access laws that the Supreme Court has deemed sufficient to confer standing. Under the FDCPA, when a debtor invokes the right to verify the debt and the debtor disputes the debt, the debt collector must *stop* collection efforts until the verification is mailed to the debtor:

> If the consumer notifies the debt collector in writing within the thirty-day period … that the debt, or any portion thereof, is disputed … the debt collector shall *cease* collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt … and a copy of such verification … is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b) (emphasis added). So, under the FDCPA, the right to information is not merely an end unto itself, but it actually permits the debtor to trigger (by disputing the debt in writing) a moratorium on collection efforts until the verification information is mailed to the debtor. This further demonstrates the concreteness of the injury arising from a § 1692g violation.

Here, although Lane concedes that he did not suffer actual monetary damages, the complaint does allege that the correspondence sent by Bayview contained "threats which override Plaintiff[']s rights found in the above stated correspondences," namely, the right to verification. Compl. ¶ 26. The concrete harm, then, is the loss of the right to verification, which is enough to satisfy the concreteness requirement of Article III standing.

It is worth noting too that the prior Seventh Circuit decisions addressing the concreteness of FDCPA injuries survived *Spokeo*, which established some general principles but did not contain a holding specific enough to overrule Seventh Circuit law on the FDCPA. As noted earlier, in its dismissal motion, Bayview acknowledges two relevant Seventh Circuit decisions that address standing in FDCPA cases. Mot. to Dismiss at 7 (citing *Keele*, 149 F.3d at 593-94, and *Phillips*, 736 F.3d at 1083). Like *Spokeo*, these cases do not hold that *any* statutory violation is enough to meet the injury-in-fact requirement. Instead, *Keele* held that the harm allegedly suffered by the plaintiff—receiving letters containing the debt collector's illegal demand for a $12.50 collection fee—was enough to establish Article III standing. 149 F.3d at 593-94. Even though the plaintiff did not pay the fee, the demand *tried* to add an unauthorized amount to the debt owed—that is, tried to get the plaintiff to pay more than owed—and that was enough for standing. *Id.* at 593. Similarly, *Phillips* held that debtors had standing to sue where the debt collectors filed allegedly unlawful debt-collection suits, even though the debt collectors never served the complaint on the plaintiff. 736 F.3d at 1082-83. *Phillips* reasoned that pending legal actions (even if not served) can "be a red flag to the debtor's other creditors" or "pressure a debtor to pay back the debt informally," and those harms qualified as actual harm that was enough for standing. *Id.* These holdings are consistent with *Spokeo*, which similarly held that "Article III requires a concrete injury even in the context of a statutory violation," but recognized that a "risk of real harm" can satisfy the concreteness requirement. 136 S. Ct. at 1549. Here, because the alleged

overshadowing at the very least posed a risk of depriving Lane of his right to verification, he satisfies the concrete-harm requirement. Bayview's standing challenge must be rejected.[7]

## B. Debt Validation Rights Under § 1692g

It is time to turn to whether Lane has stated a claim under the Fair Debt Collection Practices Act. Stated generally, the FDCPA prohibits "debt collectors" from using "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692 *et seq.* For the FDCPA to apply, a plaintiff must establish that (1) the defendant is a "debt collector," *id.* § 1692a(6), and (2) the communication at issue was made "in connection with the collection of any debt," *id.* §§ 1692c, 1692e, 1692g. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010); *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 874 (N.D. Ill.

---

[7]In its motion to dismiss, Bayview makes a brief challenge to Lane's standing on another ground: before bringing this case against Bayview, Lane filed for bankruptcy and listed his FDCPA claim as a personal property asset. Mot. to Dismiss at 1. Generally speaking, when an individual files for bankruptcy, his property, which includes potential legal claims that the debtor might have against third parties, becomes the property of the bankruptcy estate. 11 U.S.C. § 541; *see also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) (observing that the plaintiff's ERISA claim "transferred to the estate in bankruptcy by operation of law when [he] filed for bankruptcy"). If the trustee abandons the legal claims, however, the claims revert back to the debtor. *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014) ("That sequence of events indicated that the trustee had abandoned the lawsuit as property of the Chapter 7 estate, so the property reverted to the debtor, plaintiff Spaine."); *Morlan*, 298 F.3d at 617 ("[T]he effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor."). To show that the trustee abandoned this lawsuit, Lane attached a "Chapter 7 Trustee's Report of No Distribution" to his response brief. *See* R. 22, Exh. D, Chapter 7 Trustee's Report of No Distribution. In this report, the trustee states that "there is no property available for distribution from the estate over and above that exempted by law" and requests that the court discharge him as trustee. *Id.* This clear intention to abandon Lane's FDCPA claim, coupled with the fact that Bayview concedes that Lane listed the claim as a personal property asset (so the trustee was on notice of the claim), *see* Mot. to Dismiss at 1, forecloses any argument that the trustee, not Lane, owns the claim at issue here.

2015). Courts examine whether there was a demand for payment; the nature of the parties' relationship; and the purpose and context of the debt collector's communication when determining whether that communication was made in connection with the collection of a debt. *Gbruek*, 614 F.3d at 385-86; *Melnarowicz v. Pierce & Assocs., P.C.*, 2015 WL 4910748, at *4-5 (N.D. Ill. Aug. 17, 2015).

Once a plaintiff establishes that the FDCPA applies, the question then becomes whether the debt collector's communications amounted to a substantive violation of the FDCPA. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Matmanivong*, 79 F. Supp. 3d at 876. As noted earlier, Lane alleges that Bayview violated § 1692g of the FDCPA, which provides that a debt collector must disclose certain information in (or within five days after) its initial communication to a debtor. In addition to disclosing the amount of the debt and the name of the creditor to whom the debt is owed, the debt validation notice must contain "[a] statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector … ." 15 U.S.C. § 1692g(a). Most pertinently for this case, § 1692g(a) also requires that the debt collector inform the debtor of the right to dispute the debt and obtain verification of it. It bears repeating the relevant part again:

> [The notice must contain] a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt …

and a copy of such verification … will be mailed to the consumer by the debt collector … .[8]

*Id.* To prevent debt collectors from engaging in collection practices that might confuse a debtor about their debt validation rights, § 1692g also bars sending a technically compliant notice, but then "overshadowing" it with other communications: "[a]ny collection activities and communication during the 30-day [validation] period may not overshadow or be inconsistent with the disclosure of the [debtor's] right to dispute the debt … ." *Id.* § 1692g(b).

The Seventh Circuit applies the "unsophisticated consumer" standard when evaluating whether a debt collector's communication overshadowed or contradicted the § 1692g(a) debt-validation disclosures. *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012). The "unsophisticated consumer" is "uniformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but "not without a rudimentary knowledge about the financial world or incapable of making basic deductions and inferences," *Zemeckis*, 679 F.3d at 635. In any event, a plaintiff must establish that "a significant fraction of the population" would find that the communication was confusing in order to prove a § 1692g violation. *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574-75 (7th Cir. 2004) (internal quotation and citation omitted).

Because confusion is a question of fact, "dismissal is typically not available [for § 1692g claims] under 12(b)(6)." *McMillan v. Collection Prof'ls Inc.*, 455 F.3d

---

[8]For the sake of completeness, the Court notes that § 1962g(a) also requires that the debt validation notice contain "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Id.*

754, 759 (7th Cir. 2006); *see also Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) (confusion is a fact-based question). The Seventh Circuit has cautioned district courts to "tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion," reasoning that "'district judges are not good proxies for the unsophisticated consumer whose interest the statute protects.'" *McMillan*, 455 F.3d at 759 (quoting *Walker*, 200 F.3d at 501). That said, a § 1692g claim cannot survive the dismissal-motion stage where it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Taylor*, 365 F.3d at 574-75 (internal quotation and citation omitted).

For purposes of this motion to dismiss, Bayview does not dispute that it is a debt collector and that its October 14, 2015 debt validation letter was sent in connection with the collection of a debt. *See* Mot. to Dismiss at 5 n.2. The only issue, therefore, is whether Lane adequately alleged a § 1692g violation based on the two communications that Bayview sent him during the 30-day validation period, namely, the October 16, 2015 monthly mortgage statement and the October 23, 2015 HAMP solicitation letter.

### 1. October 16, 2015 Monthly Mortgage Statement

In his response brief, Lane contends that the October 16, 2015 monthly mortgage statement overshadowed his debt validation rights because it stated that (1) there was a payment of $26,285.92 due by November 1, 2015 and that a late fee of $65.71 would be imposed if the balance was not paid by November 16, 2015; (2)

15

late payments, missed payments, or other defaults may be reflected in Lane's credit report; and (3) the "outstanding principal balance" was $207,713.07. Pl.'s Resp. Br. at 2-3; *see also* Compl. ¶¶ 21-23. Bayview maintains that "a debt collector is 'perfectly free' to demand payment and pursue collection efforts, … within the validation period," Def.'s Reply Br. at 3, and asserts that the Code of Federal Regulations in fact requires loan servicers like Bayview to mail periodic mortgage statements, Mot. to Dismiss at 5-6. *See* 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement … .").

Courts in this Circuit routinely hold that communications demanding payment within the thirty-day validation period violate § 1692g. *See, e.g.*, *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518-19 (7th Cir. 1997) (determining that § 1692g violation occurred where letter "required that plaintiff's payment be *received* within the 30-day [validation] period, thus requiring plaintiff to mail the payment prior to the thirtieth day to comply."); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) (reasoning that "telling a debtor he has 30 days to dispute the debt and following that with a statement that … you have ten days to pay up or real trouble will start" constituted a § 1692g violation); *Vasquez v. Gertler & Gertler, Ltd.*, 987 F. Supp. 652, 657 (N.D. Ill. 1997) (concluding that the defendant's letter was not confusing after observing that "nothing [in the letter] demand[ed] payment or any other action within a period shorter than thirty days."). To be sure, debt collectors are not helpless in trying to collect within the thirty-day window. They

may set a deadline for payment within that time period so long as the communication contains "reconciling language" that explains "how a demand for swift payment of acknowledged debts may be reconciled with a 30-day period to request verification of the debt collector's claims." *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999); *Olson v. Risk Mgmt. Alts., Inc.*, 366 F.3d 509, 512 (7th Cir. 2004) (observing that "[a]n unexplained demand for payment within the thirty-day validation period creates confusion by contradicting, and thus rendering ineffective, the validation notice."); *cf. Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1131 (N.D. Ill. 1998) (denying the defendants' motion for summary judgment after observing that "[b]y asking Jenkins to 'immediately make payment to or arrangements with' the creditor, while simultaneously granting him thirty days to challenge the validity of the debt—*yet failing to state which provision takes precedence*—the letter presents two apparently contradictory statements without explaining their relationship." (emphasis added)). To be sure, the validation period is not a grace period, and a debt collector is free to continue its collection efforts within that thirty-day window. *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997); *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199, 1205 (N.D. Ill. 1997) ("Section 1692g does not require the debt collector to suspend collection activities."). But these collection efforts *must* clarify how two apparently contradicting rights (at least contradictory to the unsophisticated consumer)—telling the debtor that he has thirty days to dispute the debt on the one hand, while demanding payment within that thirty-day window on the other—fit together.

When viewed in the light most favorable to Lane (as required at the dismissal-motion stage), the allegations here state a valid overshadowing claim based on the October mortgage statement. That statement set a November 1, 2015 deadline for payment and announced a $65.71 late fee as of November 16, 2015.[9] The demand for payment could confuse an unsophisticated consumer because the October statement fails to explain how the deadline and late fee reconcile with Lane's thirty-day right to dispute the debt. *Cf. Bartlett*, 128 F.3d at 500 (observing that the debtor's right to contest the debt and the creditor's right to sue for late or missed payments are "not inconsistent, but by failing to explain how they fit together the letter confuses."). Bayview could have avoided any § 1692g overshadowing claim if the monthly statement acknowledged the October 14 debt-validation letter and the prior notice of Lane's validation rights, and alerted Lane that receipt of the monthly statement and its deadlines did *not* affect his right to dispute the underlying debt. But the October mortgage statement had none of that. Absent any "reconciling statement," the unsophisticated consumer could very well think that the mortgage statement replaced or overrode the debt-validation letter that Bayview sent just two days earlier.[10] *See Horkey v. J.V.D.B. & Assocs., Inc.*,

---

[9]The monthly statement warned that the late fee would be imposed if no payment was received by November 16, 2015. The initial communication to Lane was dated October 14, 2015, so it is a close call whether November 16 would fall inside or outside the thirty-day window. But because the thirty-day period starts on *receipt* of the letter, 15 U.S.C. § 1692g(a)(3), and because Lane gets the benefit of reasonable inferences right now, the Court interprets the late fee as being imposed before the expiration of the thirty-day window.

[10]The Court hastens to add that although the Code of Federal Regulations may require loan servicers to mail periodic mortgage statements, it of course does not prohibit debt collectors from doing so in compliance with § 1692g. *See* 12 C.F.R. § 1026.41; *cf.*

18

179 F. Supp. 2d 861, 865-66 (N.D. Ill. 2002) ("Even assuming *arguendo* that the December 21, 2000 notice sent from Defendant's attorney can be construed as a validation notice pursuant to Section 1692g, Defendant's demand on January 9, 2001, that Plaintiff pay the bill in full 'now' violated the 30-day validation period and therefore, would have overridden and rendered wholly ineffectual any validation notice."), *aff'd*, 333 F.3d 769 (7th Cir. 2003). On these grounds alone, Bayview's argument against the October mortgage statement must be rejected.

But there's more: the mortgage statement also warned that "late payments, missed payments or other defaults may be reflected in [your] credit report." Exh. D, 10/16/2015 Monthly Mortgage Statement. Without a reconciling statement, the unsophisticated consumer could interpret that warning as a threat of adverse credit-report action if the consumer did not pay up by the deadlines, meaning that the thirty-day window was no longer in effect. *See Vaughn v. CSC Credit Servs., Inc.*, 1995 WL 51402, at *3 (N.D. Ill. Feb. 3, 1995) ("Most unsophisticated consumers would interpret CSC's threat that 'this account could be added to your credit bureau record' as what *will* happen if they do not immediately pay the balance due or telephone CSC to discuss the account."). The § 1692g overshadowing claim based on the October mortgage statement survives.[11]

---

*Matmanivong*, 79 F. Supp. 3d at 872 (holding that mortgage servicing regulations did not implicitly repeal the FDCPA).

[11]In his response brief, Lane also argues that the October 16, 2015 monthly mortgage statement, which stated that Lane had an "outstanding principal balance" of $207,713.07, contradicted the October 14, 2015 debt validation letter, because that letter informed Lane that he owed $228,992.69. *See* Pl.'s Resp. Br. at 3. This discrepancy is not confusing. An "outstanding principal balance" is the amount a debtor must pay in order to satisfy the underlying loan, *less* interest, late payments, and other charges. The debt

## 2. October 23, 2015 HAMP Solicitation Letter

Next, Lane alleges that the October 23, 2015 HAMP solicitation letter also overshadowed the thirty-day validation period. Lane relies on two of the letter's statements: "Act now to get the help you need!," Compl. ¶ 17, and "TAKE ACTION TODAY — CALL TO LEARN MORE ABOUT YOUR OPTIONS," Pl.'s Resp. Br. at 3-4. According to Lane, these statements—with references to acting "now" and taking action "today"—would confuse an unsophisticated consumer about whether the thirty-day dispute period (which started on receipt of the October 14 letter) was still in effect.[12]

---

validation letter disclosed, as required by § 1692g(a), the total amount of debt that Lane owed, *including* interest, late payments, and other charges. In fact, that letter warned Lane that the total amount of debt that he owed "may be greater on the day that you pay … because this debt *will continue to accrue interest and other charges, which may include additional expenses and fees.*" Exh. B, 10/14/2015 Debt Validation Letter (emphasis added); *cf. Schletz v. Acad. Collection Serv., Inc.*, 2003 WL 21196266, at *1 (N.D. Ill. May 15, 2003) (unsophisticated consumer could discern the difference between "INTEREST OWING," "PRINCIPAL BAL[ANCE]," and "TOTAL BAL[ANCE] DUE"), *aff'd sub nom. Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572 (7th Cir. 2004); *Morgan v. LVNV Funding LLC*, 2014 WL 4680694, at *4 (S.D. Ind. Sept. 19, 2014) (reasoning that "an unsophisticated consumer would not be misled, confused or deceived by a proof of claim for the principal that expressly did not include interest"); *Uche v. Brumbaugh & Quandahl, P.C.*, 2010 WL 5256351, at *7 (D. Neb. Dec. 15, 2010) (holding that the defendant did not falsely represent the amount of debt under 15 U.S.C. § 1692e after reasoning that "the 'unsophisticated consumer' certainly understands the difference between principal and interest and that interest accrues on a debt as long as that debt remains unpaid.").

[12]In his complaint, Lane identifies a number of other statements in the October 23, 2015 HAMP solicitation letter that he claims would confuse an unsophisticated consumer. These statements include: "[W]e believe helping our customers avoid foreclosure is good business," Compl. ¶ 18; "Call your asset manager directly and get fast answers today," *id.* ¶ 19; and "Call us today to learn more about your options and instructions for how to apply. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution," *id.* ¶ 20. The problem is that *none* of these statements actually appear in the October 23, 2015 HAMP solicitation letter that Lane attached to his complaint. *See* Exh. C, 10/23/2015 HAMP Solicitation Letter. So, the Court will disregard these statements.

And in fact, the only allegedly confusing statement that Lane identifies in the complaint and that actually appears in the HAMP solicitation letter is the phrase, "Act now

In determining whether a collection letter violates § 1692g, the Seventh Circuit draws a line between harmless puffery versus rights-violating deadlines. That is, the case law "distinguishe[s] between language rushing the debtor to take action—to 'act now'—and provisions that set deadlines contrary or contradictory to the thirty-day validation period." *Zemeckis*, 679 F.3d at 636. While the latter is actionable, the former is not. This is because "[p]uffery, without more, does not violate Section 1692g(b). Even the most unsophisticated debtor would realize that debt collectors wish to expedite payment, and urging him to hurry does not confuse or undermine his right to his validation period." *Id.* at 636; *see also Taylor*, 365 F.3d at 575.

For example, in *Taylor v. Cavalry Investment, L.L.C.*, the Seventh Circuit considered a letter that contained the phrase, "Act now to satisfy this debt," next to the debt collector's phone number. 365 F.3d at 575. *Taylor* rejected the argument that the "act now" phrase overshadowed the plaintiff's thirty-day window to contest the debt: "'Act now to satisfy your debt' is in the nature of puffing, in the sense of rhetoric designed to create a mood rather than to convey concrete information or misinformation … ." *Id.* Reasoning that "it is perfectly obvious to even the dimmest

---

to get the help you need!" Compl. ¶ 17. It is only in his response brief that Lane claims that another statement from the HAMP solicitation letter—"TAKE ACTION TODAY — CALL TO LEARN MORE ABOUT YOUR OPTIONS"—allegedly also caused him confusion. *See* Pl.'s Resp. Br. at 3-4. Ultimately, whether or not Lane inappropriately expanded the allegations in his complaint to include the phrase "TAKE ACTION TODAY — CALL TO LEARN MORE ABOUT YOUR OPTIONS" is irrelevant because Lane's § 1692g claim based on the HAMP solicitation letter fails regardless. *See infra,* Section III.B.2 at 20-23; *see also Smith v. LexisNexis*, 2013 WL 2251771, at *3-4 (N.D. Ill. May 22, 2013) (analyzing "whether to consider the additional facts, evidence, and allegations present in Plaintiff's briefs opposing the motion to dismiss," and concluding that in any event, "[t]he additional facts contained in Plaintiff's response briefs do little to remedy [the pleading deficiencies]").

debtor that the debt collector would *very* much like him to pay the amount demanded straight off," the Court affirmed the district court's decision to dismiss the complaint. *Id.* at 575-76; *see also Zemeckis*, 679 F.3d at 635-37 (the defendant's letter, which "marrie[d] commands to act 'now' and call [the defendant] 'today' with threats of legal action," was "not tantamount to a request for payment, nor would an unsophisticated consumer understand [it] as such," and that "at worst, [the letter] contain[ed] puffery."); *Gammon v. Joseph H. Belzer, P.A.*, 1997 WL 189291, at *3-4 (N.D. Ill. Apr. 11, 1997) (communication that contained the phrase, "Your immediate attention to this matter is in your best interest," did not violate § 1692g because the letter "d[id] not demand that Gammon submit *payment* or seek validation immediately," but rather "explain[ed] its purpose, inform[ed] Gammon of his validation rights and provide[d] instruction for payment or other possible actions.").

Like the phrase at issue in *Taylor*, "Act now to get the help you need!" and "TAKE ACTION TODAY — CALL TO LEARN MORE ABOUT YOUR OPTIONS" are rhetorical devices, not overshadowing statements setting new deadlines. Rather than "impose a deadline that contradicted [Lane's] right to a thirty-day validation period," *Zemeckis*, 679 F.3d at 636, the two phrases simply encouraged Lane to ask more (and to be quick to do so) about the HAMP loan modification program. Indeed, the HAMP letter's statements are even less urgent than the statement at issue in *Taylor*, which encouraged the debtor to "Act now to satisfy your *debt*." 365 F.3d at 575 (emphasis added). Unlike in *Taylor*, the phrases here do not even encourage

Lane to pay his debt and to do it fast; rather, they just motivate him to seek out information about HAMP, a federal program which really is designed to help those who are struggling to repay their mortgage loans. *See Matmanivong*, 79 F. Supp. 3d at 872-73 ("The purpose of HAMP … is to help borrowers maintain home ownership … ."). What's more, the context in which "Act now to get the *help you need*!" appears—underneath bolded text that states "You may be able to *make your payments more affordable*"—further emphasizes that the letter is informing Lane about a federal-government program designed to reduce payments, and further negates any argument that the statements undermine the thirty-day window. Exh. C, 10/23/2015 HAMP Solicitation Letter (emphases added). For these reasons, no § 1692g claim can be asserted based on the HAMP solicitation letter.

## IV. Conclusion

For the reasons stated above, Bayview Loan Servicing's motion to dismiss, R. 11, is granted in part and denied in part. Only Lane's claim under § 1692g based on the October monthly mortgage statement, R. 1-4, will continue in the case. Lane's claim under § 1692g based on the HAMP solicitation letter, R. 1-3, is dismissed. Bayview shall answer the complaint by July 25, 2016. Rule 26(a)(1) disclosures are due by August 1, 2016, and that is the same deadline for the parties to issue their first round of written discovery requests. At the August 2, 2016 status hearing, the Court will set the remainder of the discovery schedule. The Court also encourages

the parties to engage in settlement negotiations, now that they know what part of the claim has survived the motion to dismiss.

ENTERED:


      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 11, 2016